UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHOSHANA MINZER, | : |
| Plaintiff, | : Case No. _____ |
| v. | : **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| KALEYRA, INC., DARIO CALOGERO, EMILIO HIRSCH, AVI S. KATZ, MATTEO LODRINI, JOHN J. MIKULSKY, KATHLEEN MILLER, KARIN-JOYCE TJON, and NEIL MIOTTO, | : JURY TRIAL DEMANDED |
| Defendants. | : |

---

Plaintiff Shoshana Minzer ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against Kaleyra, Inc. ("Kaleyra" or the "Company") and the members of Kaleyra's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Kaleyra will be acquired by Tata Communications Limited ("Tata"), through Tata's subsidiary TC Delaware Technologies Inc. ("Merger Sub") (the "Proposed Transaction").

2.  On June 28, 2023, Kaleyra and Tata issued a joint press release announcing entry into an Agreement and Plan of Merger (the "Merger Agreement") to sell Kaleyra to Tata. Under the terms of the Merger Agreement, each holder of Kaleyra common stock will receive $7.25 in cash for each share of Kaleyra common stock (the "Merger Consideration").

3.  On August 18, 2023, Kaleyra filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Kaleyra stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Kaleyra management's financial projections, relied upon by the Company's financial advisor Northland Securities, Inc. ("Northland") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Northland; and (iii) the background of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Kaleyra stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4.  In short, unless remedied, Kaleyra's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.  This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Indeed, the Company is headquartered in this District. Moreover, Kaleyra's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Kaleyra.

9. Defendant Kaleyra is a Delaware corporation, with its principal executive offices located at 85 Broad Street, New York, New York 10018. In 2019, Kaleyra S.p.A. ("Legacy Kaleyra") was acquired by GigCapital, Inc. (the "Business Combination"). The Company provides mobile communication services to financial institutions, e-commerce players, OTTs, software companies, logistic enablers, healthcare providers and retailers, and other organizations worldwide. Kaleyra's common stock trades on the New York Stock Exchange under the ticker symbol "KLR."

10. Defendant Dario Calogero ("Calogero") has been Chief Executive Officer ("CEO") and a director of the Company since the Business Combination.

11. Defendant Emilio Hirsch ("Hirsch") has been a director of the Company since February 10, 2020.

12. Defendant Avi S. Katz ("Katz") has been Chairman of the Board and a director of the Company since the Business Combination. Defendant Katz previously served as Founder, Executive Chairman of the Board, Chief Executive Officer, President, and Secretary of Legacy Kaleyra.

13. Defendant Matteo Lodrini ("Lodrini") has been a director of the Company since the Business Combination.

14. Defendant John J. Mikulsky ("Mikulsky") has been a director of the Company since December 2017.

15. Defendant Kathleen Miller ("Miller") has been a director of the Company at all relevant times.

16. Defendant Karin-Joyce Tjon ("Tjon") has been a director of the Company at all relevant times.

17. Defendant Neil Miotto ("Miotto") has been a director of the Company since October 2017.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Tata is a leading global digital ecosystem enabler. With a leadership position in emerging markets, and an infrastructure that spans the globe, Tata leverages its advanced solutions capabilities and domain expertise across its global network to deliver managed solutions to multinational companies and service providers. Tata partners with 300 of the Fortune 500

companies with its state-of-the-art solutions, including a wide range of communication, collaboration, cloud, mobility, connected solutions, network and data center services.

20.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Tata.

<b>SUBSTANTIVE ALLEGATIONS</b>

**Background of the Company**

21.     Kaleyra provides mobile communication services for financial institutions and enterprises of all sizes worldwide.  Through its proprietary platforms, Kaleyra manages multi-channel integrated communication services on a global scale, comprised of messages, push notifications, e-mail, instant messaging, voice services and chatbots.  The Company's subsidiaries include: Kaleyra, S.p.A. (Italy), Buc Mobile, Inc. (Delaware), Solutions Infini Technologies Private Limited (India), The Campaign Registry, Inc. (Delaware), Campaign Registry, Inc (Canada), Solutions Infini FZE (Dubai International Financial Centre),(Kaleyra US Inc. (Delaware), Kaleyra UK, Ltd (United Kingdom), Kaleyra Dominicana SRL (Dominican Republic), mGage Athens PC (Greece) and mGage SA de CV (Mexico).

22.     On August 7, 2023, Kaleyra announced its second quarter 2023 financial results and business development highlights.  Total revenue was $86.8 million, an increase of 7.0% from $81.1 million in the comparable year-ago period.  Quarterly gross profit increased 16.7% to $21.8 million from $18.7 million and adjusted gross profit, a non-GAAP measurement of operating performance, increased 10.9% to $22.4 million from $20.2 million in the comparable year-ago period.  Quarterly operating expenses of $26.2 million decreased (12.6%) or ($3.8) million from $30.1 million in the comparable year-ago period.  Net loss totaled $9.1 million, or $0.69 per share based on 13.3 million weighted-average shares outstanding, compared to a net loss of $15.8 million, or $1.28 per share based on 12.4 million weighted-average shares outstanding, in the

comparable year-ago period.  Reflecting on the results and looking to the future of the Company, defendant Calogero commented:

> During the second quarter, Tata Communications, a global digital ecosystem enabler, announced it entered into a definitive agreement to acquire Kaleyra. The all-cash transaction and investment in Kaleyra will accelerate Tata's push into the customer interactions platform market and further solidify Kaleyra's global CommTech position.  This is truly a milestone and exciting development for Kaleyra and all our constituents and stakeholders, unlocking significant value to all and securing a bright future of continuous growth and development of our legacy and heritage.  Turning to our second quarter results, we continued to deliver topline results, showing consistent year over year growth, focusing on our higher margin businesses. I am also very pleased with our continued efforts to reduce expenses, evident in the reduction of our operating expenses of 14% on a year over year basis.

**The Proposed Transaction**

23. On June 28, 2023, Kaleyra and Tata issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> NEW YORK and MUMBAI, India, June 28, 2023 /PRNewswire/ -- Tata Communications, a global digital ecosystem enabler, today announces it has entered into a definitive agreement through Tata Communications Limited to acquire Kaleyra, Inc. (NYSE: KLR) to empower global enterprises to offer personalised experiences to their customers.  Kaleyra is a global omnichannel integrated communication services provider with a set of proprietary platforms, offering targeted personalisation through messaging, video, push notifications, e-mail and voice-based services, and chatbots.
>
> With this transaction, Tata Communications will gain an industry-proven platform with strong capabilities and scale.  Kaleyra brings a stronghold in the business communications market in banking and financial services, retail and digital commerce industries across global markets, in addition to a strong team with expertise in technology, engineering and research & development.  Tata Communications will also benefit from Tier 1 carrier connections in the US, ready connectors to third party platforms, and video services without the need for additional software plugins.
>
> The resulting business will leverage Tata Communications large base of enterprise customers worldwide including 300 of the Fortune 500 companies, extensive mobile network operator (MNO) connections and global expansion opportunities. It will benefit from the global digital ecosystem enabler that powers today's fast-growing digital economy in more than 190 countries and territories.

Under the terms of the agreement, Tata Communications has agreed to acquire Kaleyra, Inc. in a cash only transaction, at a price per share of USD $7.25 for a total consideration to Kaleyra shareholders of approximately USD 100 million and the assumption of all outstanding debt.  This transaction has been unanimously approved by the Boards of Directors of both Tata Communications and Kaleyra. Consummation of the deal is subject to approval by Kaleyra's stockholders, certain regulatory approvals and other customary closing conditions. Upon closing of the transaction, expected in six to nine months, Kaleyra Inc. will become a subsidiary of Tata Communications Limited.  For the full year ended 31st December 2022, Kaleyra reported revenue of USD 339.2 million (USD 353.3 million in constant currency), an increase of 26.7% compared to the full year 2021 (32.0% increase in constant currency).

"With this investment in Kaleyra, we will accelerate our push into the customer interactions platform market and fortify our global CommTech position," said **A.S. Lakshminarayanan, MD and CEO, Tata Communications**. " We are excited about Kaleyra's remarkable talent and their demonstrated capabilities in next-gen technologies.  With this acquisition, we will further build intelligent, intuitive and innovative multi-channel communication solutions to unlock new growth opportunities for our customers."

Commenting on the acquisition, **Mysore Madhusudhan, Executive Vice President, Collaboration and Connected Solutions, Tata Communications** added, "As we further our position in the industry 4.0 world, we are committed to offering heightened targeted communications solutions for enterprises and their customers.  We are confident our combined forces with Kaleyra will forge the path for the next wave of intelligence in enterprise communications globally."

**Dario Calogero, Founder and the CEO of Kaleyra** said, "When we launched Kaleyra 24 years ago with my co-founder Simone Fubini, I could hardly envision that our voyage would take us from a small Italian startup, to global expansion, a publicly listed NYSE company, and now working together with a great technology leader like Tata Communications.  This is a great day for Kaleyra and our shareholders, and our employees worldwide."

**Dr. Avi Katz, the Chairman of the Board of Directors of Kaleyra**, commented, "I am very pleased with today's outcome, fruits of the dedicated and professional work of the Kaleyra team.  It's been a privilege to be part of the Kaleyra team since the onset of their public listing journey in late 2019, and through the follow up significant funding of the company and its meaningful strategic extensions through GigCapital.  This transaction represents a significant premium to the last closing share price and delivers significant value creation to all Kaleyra stakeholders.  We are excited about the next chapter of the Kaleyra journey, being an essential part of the Tata Communications enterprise."

**Advisors**

Lazard Frères & Co. LLC is serving as Tata Communications' financial advisor and Goodwin Procter LLP is serving as Tata Communications' legal counsel. Willkie Farr & Gallagher LLP is serving as Kaleyra's legal counsel.

**Insiders' Interests in the Proposed Transaction**

24.     Kaleyra insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Kaleyra.

25.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Tata.  Under the terms of the Merger Agreement, upon a qualifying termination in connection with the merger, all Company restricted stock units ("RSUs") will vest and convert into the right to receive cash payments, as set forth in the following table:

| Name | Company RSUs ($) |
|---|---|
| Dario Calogero | $413,004 |
| Giacomo Dall'Aglio | $322,234 |

26.     Moreover, pursuant to the Merger Agreement, Company insiders may receive success and closing retention bonuses in an aggregate amount up to $10 million.

27.     Further, if they are terminated in connection with the Proposed Transaction, Kaleyra's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites and Benefits ($) (3) | Total ($) (4) |
|---|---|---|---|---|
| Dario Calogero | $3,290,000 | $ 413,004 | $ 57,350 | $3,760,354 |
| Giacomo Dall'Aglio | $ 630,000 | $ 322,234 | $ 26,888 | $ 979,122 |

**The Proxy Statement Contains Material Misstatements and Omissions**

28. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Kaleyra management's financial projections; (ii) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Northland; and (iii) the background of the Proposed Transaction. Accordingly, Kaleyra stockholders are being asked to vote in favor of the Proposed Transaction or seek appraisal without all material information at their disposal.

*Material Omissions Concerning Kaleyra Management's Financial Projections*

29. The Proxy Statement omits material information with respect to Kaleyra management's financial projections relied upon by the Board's financial advisor, Northland, for its financial analyses.

30. For example, the Proxy Statement fails to disclose the Company's unlevered, after-tax free cash flows for the calendar years ending December 31, 2023, through December 31, 2028.

31. Additionally, the Proxy Statement only discloses the Company's projected Revenue, Gross Profit and Net Income (Loss) for calendar years 2023 through 2025 and fails to disclose the Company's projected Revenue, Gross Profit and Net Income (Loss) over the full projection period. Specifically, the Proxy Statement must disclose the Company's projected Revenue, Gross Profit and Net Income (Loss) for the calendar years 2026 through 2028.

32. Moreover, the Proxy Statement fails to disclose the line items underlying the Company's Adjusted EBITDA.

33. The omission of this information renders the statements in the "Summary of the Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Northland's Financial Analyses*

34. The Proxy Statement also describes Northland's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Northland's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Kaleyra's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Northland's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Kaleyra's stockholders.

35. With respect to Northland's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the unlevered, after-tax free cash flows that the Company was forecasted to generate during the calendar years ending December 31, 2023, through December 31, 2028; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.0% to 16.0%; and (iii) the implied terminal multiples resulting from the analysis.

36. With respect to Northland's *Selected Public Companies Analysis* and *Selected Precedent Transactions* analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics of each of the companies and transactions observed in the analysis.

37. The omission of this information renders the statements in the "Fairness Opinion of Northland Securities, Inc." section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

38. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

39. For example, the Company entered into confidentiality agreements with various parties during the sale process  Yet, the Proxy Statement fails to disclose whether the confidentiality agreement executed by the Company with parties involved in the sale process included a "don't-ask, don't-waive" ("DADW") standstill provision that is presently precluding these parties from being able to submit a topping bid for the Company.

40. The failure to disclose the existence of DADW provisions creates the false impression that these parties could make a superior proposal for the Company.  If these parties' confidentiality agreements contain a DADW provision, then these parties can only make a superior proposal by (i) breaching the confidentiality agreement—as to make the superior proposal, they would need to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

41. Any reasonable Kaleyra stockholder would consider the fact that potential bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

42. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff, and the other stockholders of Kaleyra will be unable to make a sufficiently informed voting or appraisal decision in connection

with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44.  Plaintiff repeats all previous allegations as if set forth in full.

45.  During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46.  By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about (i) Kaleyra management's financial projections; (ii) the inputs and assumptions underlying Northland's financial analyses; and (iii) the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47.  The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48.  By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of Kaleyra within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Kaleyra, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Kaleyra stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Kaleyra, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Kaleyra stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 8, 2023

WEISS LAW

By _____
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*